IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSHA STILES | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-CV-1923 |
| SYNCHRONOSS TECHNOLOGIES, INCORPORATED | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                                                                   AUGUST 12, 2008

Before the Court is defendant's motion for summary judgment.  The Court will grant the motion for the reasons that follow.

**STANDARD OF REVIEW**

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  It is not the role of the trial judge "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial," id. at 250, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255.

## BACKGROUND

Defendant provides technology services to the telecommunications industry, including assisting customers who want to retain their telephone numbers when they change service providers. Def.'s Statement of Undisputed Facts ("Def.'s Stmt.") at ¶¶ 1, 5.[1]  Plaintiff began working for defendant as the Operations Manager for a major client account in June 2004. Id. at ¶ 7. Peter Halis is defendant's Executive Vice President of Operations. Id. at ¶ 16. Halis was responsible for interviewing, hiring, and terminating plaintiff, which he did in July 2005. Id. at ¶¶ 16, 87. During the first half of her time with defendant, plaintiff focused on establishing the infrastructure that would support her major client account, a task at which she excelled. Id. at ¶¶ 21-25. Plaintiff's responsibilities later grew to include managing employees in a call center supporting that client. Id. at ¶¶ 27-28.

Plaintiff struggled with medical problems and performance issues during the second half of her employment. In March 2005, plaintiff took two weeks of sick leave due to flu and pneumonia. Id. at ¶ 9. In May and June 2005, plaintiff's attendance was sporadic and her hours were limited because of a broken ankle. Id. at ¶¶ 10, 31. Plaintiff admits that problems with her team "began to escalate" around this time. Id. at ¶ 33. Work orders were backing up, and plaintiff's major client demanded an improvement in defendant's productivity. Id. at ¶¶ 49, 63. The same client asked defendant to remove plaintiff from her position. Id. at ¶¶ 40, 67, 70.

In June 2005, two days after plaintiff returned from her ankle injury, Halis interviewed

---

[1] Defendant submitted a Statement of Undisputed Facts, and plaintiff responded with a Counterstatement of Undisputed Facts in which she admitted, denied, or supplemented defendant's Statement. Because plaintiff is the non-movant, her evidence is to be believed and all inferences drawn in her favor. Anderson, 477 U.S. at 255. Thus, when the Court cites to Defendant's Statement of Undisputed Facts, it is because plaintiff has either admitted or not disputed the veracity of defendant's submissions.

Victoria Arcella for the position of Operations Manager for plaintiff's major client account. Id. at ¶¶ 52, 65.  That evening, Halis observed the conduct of plaintiff's team, and the following Monday, he met with plaintiff to discuss her performance.  Id. at ¶¶ 52, 56.  Halis informed plaintiff that he had observed a "lack of urgency" in her team, describing plaintiff's subordinates as people "having too much fun."  Stiles Dep. at 124, 128.  He threatened to replace plaintiff with someone with "more direct operations experience" and a "pound on the table" style of management. Def.'s Stmt. at ¶¶ 56, 57.  Plaintiff told him that she was not the right person to manage in that style.  Id. at ¶ 58.  Halis then threatened to replace plaintiff with someone who could manage more aggressively. Stiles Dep. at 193.

Shortly after Halis's meeting with plaintiff, defendant extended a job offer to Victoria Arcella. Def.'s Stmt. at ¶¶ 65, 83.  Arcella's offer letter indicated that defendant was hiring her as "Operations Manager" for the major account that plaintiff was responsible for, and Arcella's letter was nearly identical to the offer letter plaintiff had received when defendant hired her. Compare Def.'s Ex. 9 (Plaintiff's Offer Letter) with Def.'s Ex. 18 (Acrella's Offer Letter).  On July 18, 2005, Halis removed plaintiff as Operations Manager, and asked her if she wanted to transition her duties to Arcella.  Stiles Dep. at 179.  Because Halis considered plaintiff a "valuable employee," he did not terminate her outright, but rather recommended her for the position of Business Analyst, and offered her the chance to interview for that job.  Def.'s Stmt. at ¶ 71.  After clarifying that refusing to transition her responsibilities to Arcella would not affect her ability to interview for the other job, plaintiff declined to work with her.  Stiles Dep. at 183, 186-87.  The following day, defendant introduced Arcella to plaintiff's former employees as the new Operations Manager.  Def.'s Stmt. at ¶ 86.

Plaintiff disputes that Arcella replaced her, asserting it was instead a man in his mid-30's named Steven Rodriguez. Compl. at ¶ 27. The Court can find little support for plaintiff's contention in the record however. Plaintiff's primary support for her position appears to be that Halis asked her to review her responsibilities with respect to her major client account with Rodriguez. Stiles Dep. at 193-94. Beyond that, plaintiff claims to have heard that Rodriguez took over her duties following her termination, but she has no specific evidence in support of this assertion, and admits that anything she claims to have heard is "just hearsay." Id. at 197. Plaintiff also specifically admits that Rodriguez was responsible for at least one customer account that she did not work on, and she does not dispute defendant's assertion that Rodriguez handled an additional customer account that she had not been involved with. Def.'s Stmt. at ¶ 89.

In contrast, the record is replete with support for defendant's position. Defendant offers the sworn statements of Holly Marston, the Director of Human Resources, Halis, and Rodriguez in support of the proposition that Arcella replaced plaintiff. Marston Dep. at 31-32; Halis Dep. at 36-37; Rodriguez Aff. at ¶¶ 5, 7-9. They point out that the offer letter Arcella received was nearly identical to the offer letter plaintiff received, Def.'s Ex. 9 and Ex. 18, that plaintiff and Arcella had nearly identical titles, Def.'s Stmt. at ¶ 84, and that they introduced Arcella as plaintiff's replacement the day after her termination. Id. at ¶ 86. Indeed, plaintiff herself admits that defendant wanted her to transition her duties to "someone named Victoria," Stiles Dep. at 192-93, and that defendant asked her to transition her duties to Arcella when they replaced her. Id. at 183. There is also an alternate explanation for Halis directing plaintiff to review how she handled her major client account with Rodriguez. It could have been not because Rodriguez was

4

to replace her, but because, as plaintiff admits, one of the client accounts Rodriguez was to manage was similar to the accounts that plaintiff had previously handled with success. Pl.'s Counterstatement of Undisputed Facts ("Pl.'s Counterstmt.") at ¶ 89. The fact that defendant directed another Operations Manager to review how he handled his major client account with Rodriguez corroborates this explanation. Rodriguez Aff. at ¶¶ 7-8.

Although it is not the role of the trial judge "to weigh the evidence and determine the truth of the matter," Anderson, 477 U.S. at 250, plaintiff may not manufacture an issue of disputed fact by relying "upon mere allegations, general denials, or [] vague statements." Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991); see also Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."). Here, plaintiff reliefs on her own self-serving assertions, whereas defendant points to record evidence and plaintiff's own admissions. Under such circumstances, the Court sees no "sufficient disagreement to require submission to a jury" on this issue, Anderson, 477 U.S. at 251-52, and concludes that it was Arcella who replaced plaintiff.

In addition to the claims stemming from her termination, plaintiff also alleges that defendant subjected her to a hostile work environment. She bases this claim on the fact that she overheard Halis say to several co-workers that "all women are good for is . . . cooking." Id. at ¶ 109.[2] Plaintiff also claims that Halis forced her to discipline another employee for wearing what he felt were inappropriate butterfly clips in her hair. Stiles Dep. at 250.

---

[2] Defendant disputes that Halis actually made this statement, but stipulates that it occurred solely for the purpose of deciding this motion. Def.'s Stmt. at ¶ 109 n.2.

Plaintiff's Complaint alleges that her termination violated the Americans with Disabilities Act ("ADA"), that defendant committed disparate treatment and disparate impact violations of the Age Discrimination in Employment Act ("ADEA"), and that defendant committed disparate treatment and hostile work environment violations of Title VII of the Civil Rights Act ("Title VII"). Plaintiff also seeks recovery for all of these transgressions under the Pennsylvania Human Relations Act ("PHRA").

## ANALYSIS

**1.     ADA**

The ADA prohibits employment discrimination on the basis of disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of such discrimination, a plaintiff must prove "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007). Under the ADA, a disability is defined as "either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." Marinelli v. City of Erie, 216 F.3d 354, 359 (3d Cir. 2000).

Plaintiff does not qualify for ADA protection. She claims that she was disabled when absent with "flu/pneumonia" in March 2005, and a broken ankle in May 2005, Compl. at ¶¶ 6, 8, but she admits that both the pneumonia and the broken ankle were temporary conditions. Def.'s Stmt. at ¶¶ 95, 97, 98. Plaintiff is therefore not disabled by her own admission, because "a temporary, non-chronic impairment of short duration is not a disability covered by the ADA."

Rinehimer v. Cemcolift, 292 F.3d 375, 380 (3d Cir. 2002) (holding that pneumonia is not an ADA disability); McDonald v. Pennsylvania, 62 F.3d 92, 96 (3d Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."). Plaintiff thus fails to establish a condition that qualifies her for protection.

It is also undisputed that defendant did not regard plaintiff as being disabled. Plaintiff admits that Halis made the decision to terminate her, and that he did not regard her as being disabled. Def.'s Stmt. at ¶¶ 87, 102. Plaintiff further admits that defendant viewed her condition as temporary. Id. at ¶ 104. Plaintiff having failed to demonstrate that she has a disability, and admitting that defendant did not regard her as having a disability, summary judgement is appropriate.

    2.    **ADEA – Disparate Treatment**

The ADEA prohibits employment discrimination on the basis of age. 29 U.S.C. § 623(a). To prevail on an ADEA disparate treatment claim, "a plaintiff must show that his or her age actually motivated or had a determinative influence on the employer's adverse employment decision." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (internal quotations and citations omitted). Plaintiff's claim fails here because she admits that age played no role in her termination. Specifically, she admits that Halis, who hired and fired her, "did not know either Ms. Stiles' or Ms. Arcella's age during their employment." Def.'s Stmt. at ¶ 82. Plaintiff further admits that "Halis did not consider Ms. Stiles' or Ms. Arcella's age, or relative age, in deciding to remove Ms. Stiles from [her position] or to hire Ms. Arcella to replace Ms. Stiles." Id. at ¶ 88. Defendant thus could not have violated the ADEA because it bans only "discrimination against employees *because of* their age." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312

(1996) (emphasis supplied). Summary judgement is therefore appropriate on plaintiff's disparate treatment claim.

### 3. ADEA – Disparate Impact

Plaintiff also alleges that defendant's actions had a disparate impact on her because of her age. Disparate impact cases "should proceed in two steps: (1) the plaintiff must prove that the challenged policy discriminates against members of a protected class, and then (2) the defendant can overcome the showing of disparate impact by proving a 'manifest relationship' between the policy and job performance." El v. SEPTA, 479 F.3d 232, 239 (3d Cir. 2007). It "is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, 544 U.S. 228, 241 (2005) (emphasis in original).

Here, plaintiff has not identified any evidence of a specific employment practice responsible for the disparate impact she alleges, nor any statistical disparity. Her sole support for this claim is a series of unsupported assertions she made at her deposition, where she alleged that defendant allowed younger employees to interview for positions that defendant did not offer to her. Stiles Dep. at 220, 222-23. But plaintiff offers no evidence to buttress these claims, she does not connect her allegations to any specific employment practice or statistical disparity, and she overlooks the fact that defendant did in fact offer her the opportunity to interview for another position. Def.'s Stmt. at ¶ 78. Because the Court is "not compelled to accept unsupported conclusions and unwarranted inferences," Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007), summary judgment is warranted

4.     **TITLE VII – Disparate Treatment**

Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000-e2(a). In order to prevail on a Title VII disparate treatment claim, a plaintiff must either show direct evidence of discriminatory intent, or establish a case indirectly through a three-step burden-shifting analysis. Schiedemantle v. Slippery Rock Univ., 470 F.3d 535, 540 (3d Cir. 2006).

Plaintiff attempts to prove her claim in the first instance through direct evidence, pointing to Halis's remark that "all women are good for is . . . cooking." Def.'s Stmt. at ¶ 109. This remark is insufficient evidence of sex discrimination because "[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989). Plaintiff does not establish, nor even allege, that Halis made his statement in the context of an employment decision, and thus she fails to prove employment discrimination through direct evidence.

Plaintiff may also prove her claim through indirect evidence using the burden-shifting approach originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This requires plaintiff to first establish a *prima facie* case by showing that she was a member of a protected class, qualified for her position, and that defendant terminated her "under circumstances that give rise to an inference of unlawful discrimination." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995) (internal quotations and citations omitted). If plaintiff can make this showing, the burden shifts to defendant to provide a nondiscriminatory reason for terminating plaintiff. Id. If defendant provides such a reason, the burden shifts back to plaintiff

to point to weaknesses in defendant's proffered reason that suggest the reason is pretextual.  Id.

Having concluded above that defendant replaced plaintiff with Victoria Arcella, the Court now finds that plaintiff has not established a *prima facie* case because she was not terminated in a manner that raises an inference of gender discrimination.  Defendant not only replaced plaintiff with a woman, they also offered her the chance to interview for another position with the company, Stiles Dep. at 179, even in the face of client complaints and mounting productivity issues.  See Def.'s Stmt. at ¶¶ 33, 40, 49, 63, 67, 70. The circumstances of plaintiff's removal thus raise no inference of gender discrimination.

Even assuming plaintiff had established a *prima facie* case, her claim would still fail because defendant offers nondiscriminatory reasons for her termination and plaintiff fails to discredit those reasons.  Waldron, 56 F.3d at 495.  As reviewed above, defendant states that plaintiff's termination resulted from client dissatisfaction and productivity issues.  Def.'s Stmt. at ¶¶ 33, 40, 49, 63, 67, 70.  Plaintiff fails to impugn this evidence, admitting the existence of customer complaints and a backlog of orders.  Def.'s Stmt. at ¶¶ 33, 49, 63.  Plaintiff nonetheless insists that she was held to a different standard than similarly situated male employees, that the disciplinary standards defendant used were subjective, and that the absence of written disciplinary policies implies that her firing was illegitimate.  But plaintiff offers no evidence in support of her conclusory allegations.  She does not identify any specific male employees who defendant retained after similar client complaints, nor point to any disciplinary procedures defendant used with other employees and not her.[3]  The Court therefore rejects plaintiff's

---

[3] Several weeks after the time to respond to defendant's motion had passed, and without requesting leave of Court, plaintiff filed an amended response in opposition.  See Dkt. Doc. No. 24.  The only new material in the amended response appears to be the contention that defendant did not formally tell plaintiff that she was failing to

unsupported claims.  See Blair, 283 F.3d at 608 (conclusory allegations insufficient to defeat summary judgment); Quiroga, 934 F.2d at 500 (same).

Though she does not assert them in this context, plaintiff could have pointed to Halis's alleged comments, both that "all women are good for is . . . cooking," and that he wanted a "pound on the table" style manager, Def.'s Stmt. at ¶¶ 57, 109, as evidence that its proffered reasons for her termination were pretextual.  These comments are unhelpful to plaintiff.  She does not connect the statements to any actual gender bias in Halis's choice to terminate her.  The fact that Halis replaced plaintiff with another woman also undercuts any inference that Halis acted with discriminatory intent.  And even assuming that Halis did not replace plaintiff with Arcella, the fact that he placed Arcella in a position similar to plaintiff's still suggests that he lacked an improper bias.  Plaintiff thus fails to discredit defendant's nondiscriminatory reasons for her termination, and summary judgment is appropriate on this claim.

### 5. Title VII – Hostile Work Environment

Plaintiff does not explicitly plead a hostile work environment violation, but examination of the Complaint as a whole and the subsequent record suggests that plaintiff seeks recovery on this basis.  Plaintiff identifies Halis's statement that "all women are good for is . . . cooking," Def.'s Stmt. at ¶ 109, as evidence of a hostile work environment, and also points to an incident where Halis told her to direct a female subordinate to remove butterfly clips from her hair.  Stiles Dep. at 250.

Plaintiff cannot sustain this charge on the basis of these two instances, however, because "isolated or single incidents of harassment are insufficient to constitute a hostile environment."

---

meet expectations.  See id. at 20.  This assertion does not change the Court's analysis.

West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995); see also, e.g., Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 440-41 (E.D. Pa. 2001) (four incidents, some of which involved touching and sexually suggestive comments, insufficient to establish hostile work environment).  Plaintiff having only identified two incidents of limited severity, this Court cannot say that defendant subjected her to a hostile work environment.  Summary judgment on this claim is therefore appropriate.

      6.      **PHRA**

The PHRA prohibits discrimination on the basis of age, disability, and gender.  43 Pa. Stat. Ann. § 955.  Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts."  Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  As such, the Court will dispose of this matter in the same fashion as the prior counts of the Complaint.  In so doing, the Court notes that plaintiff has stated no opposition to defendant's motion for summary judgment with respect to this claim.

An appropriate Order and Judgment accompany this Memorandum Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSHA STILES | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 07-CV-1923 |
| SYNCHRONOSS TECHNOLOGIES INCORPORATED | : | |
| | : | |
| Defendant | : | |

**ORDER & JUDGMENT**

AND NOW, this 12th day of August, 2008, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Document No. 16) is GRANTED.

IT IS FURTHER ORDERED that JUDGMENT on all counts is entered in favor of defendant and against plaintiff.

BY THE COURT:

/s/ Thomas M. Golden
THOMAS M. GOLDEN, J.